**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHERYL KEHRER, individually, on Behalf of the Giant Eagle, Inc. Employee Savings Plan, and on behalf of all others Similarly situated, | : : : : : | |
| Plaintiff, | : : | |
| v. | : : | Civil Action No. 2:24-cv-01211 |
| GIANT EAGLE, INC., INVESTMENT and ADMINISTRATIVE COMMITTEE of the Giant Eagle, Inc. Employee Savings Plan, JOHN DOES 1-30 in their capacities as members of the Investment or Administrative Committees, | : : : : : : : | |
| Defendants. | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, AND SCHEDULING OF FAIRNESS HEARING**

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................1

II.    THE PROPOSED SETTTLEMENT ......................................................3

III.   THE PROPOSED SETTLEMENT NOTICE PLAN SHOULD BE
       APPROVED ............................................................................................4

       A.   Legal Standard .............................................................................3

       B.   The Settlement Satisfies the *GMC* Factors Underscoring its Fairness ........4

            1.     Arms' Length Negotiations............................................................4

            2.     Amount of Discovery......................................................................4

            3.     Experience of Counsel ...................................................................5

            4.     Objections ......................................................................................6

       C.   The Third Circuit's *Girsh* Factors are also Satisfied ...................................6

            1.     The Complexity, Expense, and Likely Duration of the Litigation ..6

            2.     The Reaction of the Class to the Settlement ...................................7

            3.     The Stage of the Proceedings and the Amount of Discovery .........7

            4.     The Risks of Establishing Liability and Damages..........................7

            5.     The Risks of Maintaining the Class Action through Trial..............8

            6.     The Ability of the Defendants to Withstand a Greater Judgment....8

            7.     The Range of Reasonableness of the Settlement Fund in Light
                   of the Best Possible Recovery and in Light of all Attendant
                   Risks of Litigation ........................................................................8

            8.     The Requirements of FED. R. CIV. P. 23(e)(2) Also Are or Likely
                   Will Be Satisfied .......................................................................... 10

i

IV.  THE PROPOSED NOTICE PLAN SHOULD BE APPROVED......................12

    A.  The Proposed Notice Plan Meets the Requirements of Due Process.........12

    B.  Description of the Notice Plan................................................................12

V.  CLASS CERTIFICATION IS APPROPRIATE .................................................14

    A.  The Proposed Class Satiffies the Requirements of Rule 23(a) .................15

        1.  The Class is Sufficiently Numerous ...............................................15

        2.  Common Questions of Law and Fact Abound.............................15

        3.  Plaintiff's Claims are Typical of the Class ....................................16

        4.  Plaintiff and Class Counsel Will Adequately Protect the
Interest of the Class.......................................................................17

            i.  Plaintiff Has No Conflicts With Other Members of
the Class and Will Vigorously Prosecute This Action
on Behalf of the Class .........................................................17

            ii.  Plaintiff's Counsel Have No Conflicts With the Class,
Are Qualified and Experienced, and Will Vigorously
Prosecute This Action for the Class....................................17

    B.  The Class May Be Properly Certified Under Rule 23(b)(1)...................19

        1.  Certification Under Rule 23(b)1(B) is Most Appropriate ...........19

        2.  Certification is Also Appropriate Under Section 23(b)(1)(A) .....21

VI.  CONCLUSION...................................................................................................21

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475 (S.D. Ill. July 17, 2015) ..................................................................11

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997)...................................................................................................19

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006)........................................................................................16

*Beesley v. Int'l Paper Co.*,
2014 WL 375432 (S.D. Ill. Jan. 31, 2014)...................................................................11

*Boley, et al. v. Universal Health Servs., Inc., et al.*,
2021 WL 859399 (E.D. Pa. Mar. 8, 2021)...................................................................18

*Clark v. Duke Univ.*,
2018 WL 1801946 (M.D.N.C. April 13, 2018) .............................................................19

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010)..........................................................................................1

*In re Flonase Antitrust Litig.*,
951 F.Supp.2d 739 (E.D. Pa. 2013) ..............................................................................6

*Fulton-Green v. Accolade, Inc.*,
No. 18-274, 2019 WL 4677954,(E.D. Pa. Sept. 24, 2019) ..........................................16

*In re: Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)....................................................................................*Passim*

*Girsh v. Jepson*,
521 F.2d 153 (3d. Cir. 1975)...................................................................................4, 8,

*Halley v. Honeywell Int'l, Inc.*,
861 F.3d 481 (3d Cir. 2017)....................................................................................5, 12

*Harry M. v. PA Dept. of Public Welfare*,
2013 WL 1386286 (M.D. Pa. Apr. 4, 2013). ................................................................3

*In re: Honeywell Int'l Sec. Litig.*,
211 F.R.D. 255 (D.N.J. 2002) ..................................................................................15

*In re Ikon Office Solutions, Inc.*,
191 F.R.D. 457 (E.D. Pa. 2000) ..............................................................................14

*See In re: Janney Montgomery Scott LLC Fin. Consult. Litig.*,
No., 2009 WL 2137224 (E.D. Pa. July 16, 2009) ...................................................13

*Jones v. NovaStar Fin., Inc.*,
257 F.R.D. 181 (W.D. Mo. 2009) ...........................................................................20

*Karg et al. v. Transamerica Corp.*,
2020 WL 3400199 (N.D. Iowa Mar. 25, 2020) ............................................15, 17, 18

*Koch v. Dwyer*,
No. 98-CV-5519, 2001 WL 289972, (S.D.N.Y. Mar. 23, 2001 ...............................20

*Krueger v. Ameriprise Financial*,
2015 WL 4246879 (D. Minn. July 13, 2015) ..........................................................11

*Kruger v. Novant Health, Inc.*,
2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ........................................................11

*In re: Linerboard Antitrust Litig.*, 3
21 F. Supp. 2d 619 (E.D. Pa. 2004) ...........................................................................8

*Mass. Mut. Life Ins. Co.*,
473 U.S. 134 (1985) .................................................................................................20

*McDonald v. Edward Jones*,
791 Fed.Appx. 638 (8th Cir. 2020) ..........................................................................11

*In re: Merck & Co., Inc. Securities, Derivative & ERISA Litig.*,
MDL No. 1658, 2009 WL 331426, (D.N.J. Feb. 10, 2009) ......................................14

*Moore v. Comcast Corp.*,
268 F.R.D. 530 (E.D. Pa. 2010) .........................................................................13, 19

*Moore v. Simpson*,
1997 WL 570769 (N.D. Ill. Sept. 10, 1997) ............................................................15

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) .................................................................................................12

*In re: Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016)..............................................................................................*Passim*

*In re: Nat'l Football League Players Concussion Injury Litig.*,
307 F.R.D. 351 (E.D. Pa. 2015)...............................................................................................8

*In re: New Jersey Tax Sales Certification Antitrust Litig.*,
750 Fed.Appx 73 (3d Cir. 2018)...............................................................................................3

*In re: Nortel Networks Corp. ERISA Litig.*,
2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009)......................................................................20

*Nunez v. B. Braun Med., Inc.*,
No. 20-4195 (E.D. Pa. Aug. 18, 2023) .....................................................................................7

*Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998).................................................................................................4, 6

*Reibstein v. Rite Aid Corp.*, 7
61 F.Supp.2d 241 (E.D. Pa. 2011) ............................................................................................8

*In re: Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003) .......................................................................................7

*In re: Schering-Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009)...............................................................................7,13, 14, 19

*Sims v. BB&T Corp.*,
2017 WL 3730552 (M.D.N.C. Aug. 28, 2017).......................................................................15

*Spano v. The Boeing Co.*,
2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ..........................................................................11

*Stanford* v. *Foamex, L.P.*,
263 F.R.D. 156 (E.D. Pa. 2009).................................................................................14,16, 20

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011).......................................................................................................8

Thomas v. SmithKline Beecham Corp.,
201 F.R.D. 386 (E.D. Pa. 2001)..............................................................................................14

*Tracey v. Mass. Inst. Tech.*,
2018 WL 5114167 (D. Mass. Oct. 19, 2018)..........................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ....................................................................................................14

*In re: Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ......................................................................................3, 8

**STATUTES**

Fed. R. Civ. P 23(a)(1) ...............................................................................................14

Fed. R. Civ. P 23(a)(2) ..........................................................................................14, 15

Fed. R. Civ. P 23(a)(4) ...............................................................................................16

Fed. R. Civ. P 23(b)(1) ..........................................................................................19, 20

Fed. R. Civ. P 23(b)(1)(A) .....................................................................................19, 20

Fed. R. Civ. P 23(b)(1)(B) .....................................................................................19, 20

Fed. R. Civ. P. 23(c)(2) .............................................................................................5, 10

Fed. R. Civ. P. 23(e) ...................................................................................................13

Fed. R. Civ. P. 23(e)(1)(B)(i) .....................................................................................4, 10

Fed. R. Civ. P.  23(e)(2) ............................................................................................5, 10

Fed. R. Civ. P. 23(e)(2)(C)(ii) ....................................................................................11

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...................................................................................11

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................11

Fed. R. Civ. P. 23(e)(3) ..............................................................................................11

Fed. R. Civ. P. 23(g) ..............................................................................................17, 18

Fed. R. Civ. P. 23(g)(1)(A) .........................................................................................17

Fed. R. Civ. P. 23(g)(1)(B) .....................................................................................17, 18

29 U.S.C. § 1104(a). ....................................................................................................2

28 U.S.C. §§ 1332(d), 1453, and 1711-1715 .............................................................1

**Other Sources**

Class Action Fairness Act of 2005 ("CAFA")..............................................................................21

Employee Retirement Income Security Act of 1974 ...........................................................*Passim*

## I.     INTRODUCTION

Plaintiff Cheryl Kehrer, on behalf of the Giant Eagle, Inc. Employee Savings Plan (the "Plan"), respectfully submits this Memorandum of Law in support of Plaintiff's motion for preliminary approval of the proposed Settlement[1] of this ERISA class action.  The Settlement is an excellent result, provides a meaningful and immediate payment to the Settlement Class, and eliminates the risks and costs of continued litigation and trial. A trial or unfavorable ruling on summary judgment could result in a reduced recovery or no recovery at all. Hence, "there is a strong judicial policy in favor of class action settlement[s]." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). For all of the reasons set forth below, the Court should find that the Settlement is fair, reasonable, and adequate under governing law, and satisfies all of the elements for preliminary approval and dissemination of the Class Notice.

Plaintiff instituted this action on August 23, 2024 with the filing of the Complaint. ECF No. 1. Prior to filing suit, Plaintiff's Counsel conferred extensively with Plaintiff and served a request upon Defendants under ERISA §104(b) for relevant documents pertaining to the operation of the Plan. In response, the Defendants produced a significant volume of documents including ERISA §405(a)(1) and §408(b) disclosures and governing Plan documents, which Plaintiff's counsel thoroughly considered with the assistance of fiduciary consultants. After much analysis, Plaintiff filed a detailed Complaint alleging Defendants violated their fiduciary duty of prudence under ERISA § 404(a), 29 U.S.C. § 1104(a) by failing to employ a prudent process in managing

---

[1] Capitalized terms herein shall have the meaning ascribed to them in the Settlement Agreement, attached to the Kilpela Decl. as Exhibit 1.  The Settlement Agreement itself has several exhibits: A (Long-Form Settlement Notice); B (Plan of Allocation); C (proposed Preliminary Approval Order); D (proposed Final Approval Order); E (CAFA Notice); and F (postcard Notice).

the Plan and allowing the Plan to pay unreasonable costs to a third-party recordkeeper for recordkeeping and administrative services ("RKA").

On November 12, 2024, Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF Nos. 12–13. Defendants strenuously denied any breach of duty, set forth grounds why they believed they adhered at all times to a prudent process, and asserted grounds for why they believed the RKA fees were reasonable. Plaintiff submitted a comprehensive memorandum in opposition to the motion on December 3, 2024. ECF No. 19. With Plaintiff's consent, Defendants filed a reply memorandum on December 16, 2024 in further support of their motion. ECF No. 22.

As the motion was pending, counsel for the Parties discussed the possibility of exploring alternative dispute resolution. Kilpela Decl., ¶ 9. In connection therewith, Defendants produced several hundred pages of additional documents, including all relevant RKA agreements over the Class Period, fee summaries, fund disclosures, Committee meeting minutes, and documents concerning a request for proposal conducted in connection with the Plan's RKA services. *Id*. at ¶ 10. On February 26, 2025, the Parties participated in a day long mediation before Mark Shepard, a shareholder of the Babst Calland law firm in Pittsburgh, who is a highly experienced, full-time mediator with extensive experience in ERISA-related disputes as well as other areas of complex litigation. After substantial debate and discussion, the Parties agreed to a settlement in principle of $668,750.00 at the conclusion of the mediation. Thereafter, the Parties spent nearly three months finalizing the specific terms and details of the Settlement Agreement, which the Plaintiff now presents for the Court's preliminary approval.

## II.    THE PROPOSED SETTLEMENT

The Settlement provides Defendants will pay $668,750.00—the Gross Settlement Amount—to be allocated to participants on a pro-rata basis pursuant to the proposed Plan of Allocation (*see* Article 5 of Settlement Agreement, and Exhibit B to the Settlement Agreement) in exchange for releases and dismissal of this action (described in Article 7 of the Settlement Agreement). Kilpela Decl. ¶¶ 18-19. The Qualified Settlement Fund will be used to pay the Class Members' recoveries, administrative expenses to facilitate the Settlement, Plaintiff's counsel's attorneys' fees and costs, and the Class Representative's Case Contribution Award if approved by the Court. *Id.* at ¶ 20. The Class Members include all individuals in the Settlement Class, meaning:

> All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are Defendants and their Beneficiaries.

*Id* at ¶ 21. (*citing* Settlement Agreement, § 1.47). Class Period means the period from August 23, 2018 through the date of the Preliminary Approval Order. *Id*.

Class Counsel may seek to recover their attorneys' fees not to exceed one-third of the Gross Settlement Amount. Kilpela Decl., ¶ 23 (citing Settlement Agreement, Section 1.5). Class Counsel also intend to seek to recover litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation, not to exceed $15,000.00. *Id.* Additionally, Class Counsel intends to seek a Class Representative's Case Contribution Award in the amount of $5,000 for Plaintiff Cheryl Kehrer. *Id*. (citing Settlement Agreement., Section 1.10). Defendants also intend to retain an Independent Fiduciary to approve and authorize the settlement on behalf of the Plan. Kilpela Decl., ¶ 24 (citing Settlement Agreement, § 1.28 and Article 2). The fees and expenses of the Independent Fiduciary will not exceed $25,000. Settlement Agreement at § 2.1.3. Fees and

3

expenses to the Independent Fiduciary will constitute Administrative Expenses to be deducted from the Qualified Settlement Fund. *Id.* Additionally, all reasonable fees and expenses of the Settlement Administrator and Escrow Agent will be paid as Administrative Expenses from the Qualified Settlement Fund. *Id*. §1.3. These fees are not expected to surpass $40,000. Kilpela Decl., ¶ 25.

## III.    THE PROPOSED SETTLEMENT NOTICE PLAN SHOULD BE APPROVED

### A.  Legal Standard

"[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re: Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("*Warfarin*"). "Review of a proposed class action settlement involves a two-step process: preliminary approval and a subsequent fairness hearing." *Harry M. v. PA Dept. of Public Welfare*, 2013 WL 1386286, at *1 (M.D. Pa. Apr. 4, 2013).  At the preliminary approval stage, courts must apply the *GMC* test to determine whether: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re: Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("*GMC*"). If these factors are satisfied, the settlement is presumed to be fair. *Id.*

At the final approval stage, the district court must determine whether "the proposed settlement is 'fair, reasonable and adequate.'" *In re: New Jersey Tax Sales Certification Antitrust Litig.*, 750 Fed.Appx 73, 77 (3d Cir. 2018) ("*NJ Tax Sales*"), quoting FED. R. CIV. P. 23(e). To make this determination at the time of final approval, courts in this circuit employ the more rigorous test set forth in *Girsh v. Jepson*, 521 F.2d 153,157 (3d. Cir. 1975).

### B.  The Settlement Satisfies the *GMC* Factors Underscoring its Fairness

#### 1.  Arms' Length Negotiations

The negotiations leading to this Settlement certainly were at arm's-length, readily satisfying the first prong of the *GMC* test.  The Parties settled this matter only after a full day of settlement negotiations under the guidance of a well-respected, neutral mediator. Kilpela Decl., ¶¶ 11, 16.

#### 2.  Amount of Discovery

Parties should have an "adequate appreciation" of the merits in settling a case. *Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998) ("*Prudential*") (citing *GMC,* 55 F.3d at 813). In light of the comprehensive production of relevant documents received in response to Plaintiff's ERISA §104(b) request, along with the substantial production made by Defendants in connection with the mediation in response to the specific demands of Plaintiff, the discovery efforts were meaningful and enlightening. *Id. at* ¶¶ 5, 10. From Defendants' discovery productions, and independent research, including consultation with Plaintiff's fiduciary experts, Plaintiff's counsel were able to assess the strengths and weaknesses of Plaintiff's claims, and calculate potential Class-wide damages. *Id. at* ¶¶ 13, 15. The second *GMC* prong is thus readily satisfied.

#### 3.  Experience of Counsel

Plaintiff's counsel are highly experienced, they have a firm understanding of these types of ERISA class actions, and they approve of the Settlement. As discussed in greater detail *infra*, Section V.A.4.ii, the experience of Class Counsel in analogous actions weighs strongly in favor of the fairness of the proposed Settlement—a Settlement which Class Counsel firmly stand behind.

Kilpela Decl., ¶¶ 30-31, 35. Counsel for Defendants are also one of the preeminent firms in the country with substantial experience representing clients in analogous ERISA class actions.

### 4. Objections

The fourth prong of the *GMC* test is not fully assessable at this time because notice to proposed Class Members has not yet been provided.

## C. The Third Circuit's *Girsh* Factors are also Satisfied

Although satisfaction of the *GMC* test is sufficient for preliminary approval, the Settlement also meets the more exacting approval standard articulated by the Third Circuit in *Girsh* and in Rule 23(e)(2). A court may approve a settlement even if it does not find all of these factors militate in favor of approval. *See*, *e.g.*, *NJ Tax Sales*, 750 Fed. Appx. at 77, *citing Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 489-90, 491 (3d Cir. 2017) (affirming settlement approval where some factors did not weigh in favor of settlement).

### 1. The Complexity, Expense, and Likely Duration of the Litigation

"The first factor 'captures the probable costs, in both time and money, of continued litigation.'" *In re: Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016), *as amended* (May 2, 2016) ("*NFL*") (quoting *Warfarin*, 391 F.3d at 535-36 (internal quotation omitted)). Here, the expected costs of continued litigation are extremely high, both in terms of time and money. Considerable additional discovery, both paper and testimonial, would be required before the case would be trial ready. Prior to trial there certainly would be discovery and motion practice in regard to class certification as well as factual and expert discovery, dispositive motions, and likely assorted motions in limine, and possible interlocutory appeals. The Settlement avoids such expenses and delays and provides definite and immediate relief to the Class.

### 2.    The Reaction of the Class to the Settlement

As noted in Section III.B.4 *supra*, analysis of this factor is premature as notice of the proposed Settlement will be disseminated to the Settlement Class only after this Court grants preliminary approval of the Settlement.

### 3.    The Stage of the Proceedings and the Amount of Discovery

As with the second prong of the *GMC* test, pursuant to the third *Girsh* factor, the Court must consider the "degree of case development that Class Counsel have accomplished prior to Settlement," including the type and amount of discovery already undertaken. *GMC*, 55 F.3d at 813. "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *NFL*, 821 F.3d at 438-39 (3d Cir. 2016), quoting *Warfarin*, 391 F.3d at 537 (internal quotation omitted). As discussed *supra*, and in Plaintiff's Counsel's declaration, the totality of the Parties' discovery efforts favors approval of the Settlement as the Parties were able to effectively evaluate potential liability, the strengths and weaknesses of their respective positions, and the range of potential damages.

### 4.    The Risks of Establishing Liability and Damages

The fourth and fifth *Girsh* factors, which require examination of the risks of establishing liability and damages respectively, are "closely related" and therefore are properly addressed together. *In re Flonase Antitrust Litig.*, 951 F.Supp.2d 739, 744 (E.D. Pa. 2013). "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them," *GMC*, 55 F.3d at 814, and these inquiries "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken

to trial against the benefits of an immediate settlement." *Prudential*, 148 F.3d at 319; *see also In re: Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001), quoting *GMC*, 55 F.3d at 816.

Regarding establishing liability, in this complex ERISA class action, Plaintiff would proffer an expert for liability and damages, which Defendants undoubtedly would counter with their own proffered expert(s). Ultimately, a battle of experts presenting differing opinions as to the prudence of the conduct of Defendants and starkly different views on liability would ensue and the factfinder "would therefore be faced with competing expert opinions representing very different damage estimates[,] . . . adding further uncertainty." *In re: Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506 (W.D. Pa. 2003). Although a trial on the merits in any case always entails some risk, in the context of ERISA breach of fiduciary duty class actions, the risk is even more considerable as plaintiffs in various cases have been unable to satisfy their burdens of proof in analogous cases. *See*, *e.g.*, *Nunez v. B. Braun Med., Inc.*, No. 20-4195 (E.D. Pa. Aug. 18, 2023)(trial verdict for defendants in similar case).

### 5. The Risks of Maintaining the Class Action through Trial

The sixth *Girsch* factor requires the Court to examine the risks of maintaining the class-action through trial due to the fact "[t]he value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits." *GMC*, 55 F.3d at 817. "Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action." *Id.*

The Third Circuit has referred to ERISA derivative actions brought on behalf of a plan and its participants, such as the instant case, as "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." *In re: Schering-Plough Corp. ERISA Litig.*, 589 F.3d 585,

604 (3d Cir. 2009) ("*Schering-Plough ERISA*"). Nevertheless, this factor militates in favor of settlement as the Settlement eliminates any uncertainty of Plaintiff being able to establish and maintain a certified class through trial and in the face of skilled counsel for Defendants.

### 6. The Ability of the Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor requires the Court to consider "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *Warfarin*, 391 F.3d at 537-38. The Third Circuit has noted, "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323 (3d Cir. 2011). This is because, "when there is no 'reason to believe that Defendants face any risk of financial instability[,] . . . this factor is largely irrelevant.'" *In re: Nat'l Football League Players Concussion Injury Litig.*, 307 F.R.D. 351, 394 (E.D. Pa. 2015) (quoting *Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d 241, 254 (E.D. Pa. 2011)). Thus, "the settling defendant's ability to pay greater amounts [may be] outweighed by the risk that the plaintiffs would not be able to achieve any greater recovery at trial." *In re: Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 632 (E.D. Pa. 2004).

While Defendants could likely withstand a judgment in an amount larger than the Settlement amount, the Parties are not contending that Defendants' inability to pay a larger amount is a basis for the amount of the Settlement, thus, this factor is neutral.

### 7. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of all Attendant Risks of Litigation

"According to *Girsh*, courts approving settlements should determine a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and a range in light of all the attendant risks of litigation (the ninth [*Girsh*] factor)." *GMC*, 55 F.3d at 806. To assess the

reasonableness of a settlement in a case such as this, seeking primarily monetary relief, a court should compare "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement." *NFL,* 821 F.3d at 440, quoting *Prudential*, 148 F.3d at 322 (internal quotation omitted). In determining the range of recovery in this case, at one extreme is the possibility Defendants might prevail on one or more of their legal or factual arguments to defeat liability entirely. While Plaintiff is confident of the strength of the claims asserted, the possibility that her claim could be rejected by the Court cannot be discounted completely. Here, Plaintiff' alleged that Defendants failed to follow a prudent process and properly monitor and control the Plan's recordkeeping expenses. ECF No.1 ¶¶ 57-77.

Plaintiff's assessment of maximum potential damages to the Plan, in a best case scenario, was approximately three million dollars. Kilpela Decl., ¶ 13. Putting aside liability arguments, before and during mediation, Defendants vigorously contested Plaintiff's damages assessment. Defendants argued that not only did they adhere to a prudent process at all times, but even if Plaintiff were to somehow prevail on the merits, the damages would be approximately half of what Plaintiff asserted.  As shown in their motion to dismiss, not only did Defendants assert facts to demonstrate a purported prudent process of fiduciary review, Defendants challenged the comparators utilized by Plaintiff in calculating potential damages, as well as the per-participant RKA fees put forth by Plaintiff. *Id. at* ¶ 15. While Plaintiff was confident in her theory of liability and calculation of potential damages, she acknowledges that Defendants would raise a strong challenge to her claims.

Moreover, Plaintiff's figures are dependent on the Court finding Defendants' fiduciary breaches to have occurred at the start of the Class Period on August 23, 2018. But there is no

guarantee this date ultimately would be accepted as the start of the damages period or that Plaintiff otherwise would be successful in establishing liability. The use of a later breach date and/or a determination the challenged decision-making processes were prudent could result in a recovery well below the $668,750.00 settlement amount or no recovery at all. Given the wide range of potential damages, the outcomes at trial, and the uncertainty of proving actual losses to the Plan, the monetary settlement is fair and reasonable. Additionally, an RFP for recordkeeping has recently been concluded which will result in even further reduced fees to the Plan.

### 8. The Requirements of FED. R. CIV. P. 23(e)(2) Also Are or Likely Will Be Satisfied

Rule 23(e)(1)(B)(i), as amended, provides preliminary approval should be granted, and notice to the class authorized, if "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)." FED. R. CIV. P. 23(e)(1(B)(i). Rule 23(e)(2) now primarily combines portions of the *GMC* test with several of the *Girsh* factors.[2] As a result, because the instant Settlement satisfies the *GMC* test and the *Girsh* factors, the requirements of Rule 23(e)(2) are substantially met for purposes of both preliminary and final approval. The three factors not encompassed by the *GMC* test and the *Girsh* factors the Court is to consider when determining whether to grant **final** approval are: (1) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; (2) "the terms of any proposed award of attorney's fees, including timing of payment"; and (3) whether "the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(C)(ii), (C)(iii) and (D).

---

[2] Rule 23(e)(3) requires "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). There are no agreements, other than the Settlement itself, in this case.

As detailed *infra*, Section IV, the proposed Notice plan submitted by the Parties comports with due process. This, combined with the Plan of Allocation, satisfies the requirement of Rule 23(e)(2)(C)(ii). Additionally, a proposed maximum of one-third of the Settlement Amount in attorneys' fees is contained in the proposed Class Notice. This amount is in line with analogous awards in ERISA class action cases and other complex litigation and should be approved by the Court in accord with Rule 23(e)(2)(C)(ii).[3] Finally, the Plan of Allocation detailed in the Settlement Agreement treats class members fairly and equitably in relation to each other, thereby satisfying the requirement of Rule 23(e)(2)(D). Accordingly, the Court properly can determine it is likely to grant final approval under Rule 23(e)(2), and therefore, preliminary approval is appropriate under Rule 23(e)(1)(B)(i).

## IV.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A.  The Proposed Notice Plan Meets the Requirements of Due Process

In addition to preliminarily approving the Settlement Agreement, the Court must also approve the proposed means of notifying class members. FED. R. CIV. P. 23(c)(2); *see also Harry M.*, 2013 WL 1386286, at *2. "Adequate notice is essential to securing due process of law for the class members, who are bound by the judgment entered in the action." *Harry M.*, 2013 WL 1386286, at *2. In order to satisfy due process considerations, notice to Settlement Class Members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the

---

[3] *See McDonald v. Edward Jones*, 791 Fed.Appx. 638, 640 (8th Cir. 2020) (affirming judgment awarding the class counsel attorneys' fees of 1/3 of the settlement fund); *see also Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016); *Spano v. The Boeing Co.*, 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015); *Krueger v. Ameriprise Financial*, 2015 WL 4246879, at *4 (D. Minn. July 13, 2015); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014).

pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal citations omitted).

As set forth below, Plaintiff's proposed means of providing notice to the Settlement Class readily satisfies this standard as well as the mandates of due process. The combination of direct Short Form Postcard Settlement Notice mailings to all Class Members (*see* Exhibit E) and publication of the Long Form Settlement Notice (*see* Exhibit A) on a dedicated Settlement website will cause actual notice to reach a very high percentage of Class Members.

### B. Description of the Notice Plan

As an initial matter, Class Counsel has asked the Court to approve the selection of Analytics Consulting, LLC ("Analytics") as the Settlement Administrator for the Settlement. *See* Proposed Preliminary Approval Order, ¶ 7. Analytics is an industry leader in class action settlement administration and has successfully administered thousands of class settlements. *See* *https://www.analyticsllc.com/about-us/*.

The Settlement Notice plan includes multiple components designed to reach the largest practical number of Class Members. First, the Short Form Postcard Settlement Notice will be sent via First Class mail, postage prepaid, to the last known address of each Settlement Class Member within thirty (30) calendar days of the Court's order granting preliminary approval of the Settlement. *See* Kilpela Decl. at ¶ 26; Exhibit C (Proposed Preliminary Approval Order Exhibit) ¶ 7. Analytics shall use commercially reasonable efforts to locate any Class Member whose Settlement Notice is returned and re-send such documents one additional time. Kilpela Decl. at ¶ 27. Additionally, within thirty (30) calendar days, the Long Form Settlement Notice, along with other litigation-related documents such as a list of frequently asked questions and the Settlement Agreement with all of its Exhibits, will be posted on a dedicated Settlement website established

for the purposes of effectuating this Settlement. *Id* at ¶ 28. The Settlement Administrator will also establish and monitor a dedicated, toll-free Settlement telephone number which will include an Interactive Voice Response system with answers to frequently asked questions, and also provide email support for written inquiries from Class Members. *Id* at ¶ 29. The Settlement Notice Plan agreed to by the Parties satisfies all due process considerations and meets the requirements of FED. R. CIV. P. 23(e).[4]

## V.    CLASS CERTIFICATION IS APPROPRIATE

Plaintiff seeks preliminary certification of the defined Settlement Class (*see* Section II *supra*). At the preliminary approval stage, when the Court has not previously certified a class, it may preliminarily certify a class for purposes of providing notice, leaving the final certification decision for the subsequent final Fairness Hearing. To be certified, a class must first satisfy the four basic prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. FED. R. CIV. P. 23(a); *In re: Schering-Plough Corp. ERISA Litig.*, 589 F.3d 585, 596 (3d Cir. 2009); *Moore v. Comcast Corp.*, 268 F.R.D. 530, 535 (E.D. Pa. 2010). Plaintiff has satisfied all four elements of Rule 23(a). In this matter, the proposed Settlement Class (identified in the Settlement Agreement and Section II *supra*) satisfies each of the prerequisites of Rule 23(a) as well as at least one of the alternate requirements of Rule 23(b).

---

[4] Indeed, individual notice by First Class mail alone has been recognized as a manner of delivery of notice which comport with due process. *See In re: Janney Montgomery Scott LLC Fin. Consult. Litig.*, No., 2009 WL 2137224, at *7 (E.D. Pa. July 16, 2009). Plaintiff's proposed Settlement Notice plan goes well beyond individual notice by First Class mail, further underscoring its fairness and appropriateness.

Precedent, including from within the Third Circuit, is clear these types of ERISA §
502(a)(2) breach of fiduciary duty claims are well-suited for class treatment as they are brought,
by definition and in practice, on behalf of retirement plans and affected participants.[5]

### A. The Proposed Class Satisfies the Requirements of Rule 23(a)

#### 1. The Class is Sufficiently Numerous

Rule 23(a)(1) calls for certification if "the class is so numerous that joinder of all members
is impracticable." FED. R. CIV. P. 23(a)(1). When there "are thousands of participants in [a] plan
in any given year," the court "should make common sense assumptions regarding numerosity." *In
re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 462 (E.D. Pa. 2000) (numerosity satisfied in
analogous ERISA breach of fiduciary duty case where there were thousands of plan participants);
*see also Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 391 (E.D. Pa. 2001). Here,
numerosity is clearly satisfied because there are over 15,000 active and former Plan participants
in the Settlement Class.[6]

#### 2. Common Questions of Law and Fact Abound

Plaintiff must also demonstrate the existence of common questions of law or fact. FED. R.
CIV. P. 23(a)(2). Commonality involves "the capacity of a class-wide proceeding to generate
common *answers* apt to drive resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564
U.S. 338, 350 (2011) (internal quotations omitted). This case presents many common questions of
law and fact, applicable to all members of the Settlement Class, including: (1) whether Defendants

---

[5] *See, e.g.*, *In re: Merck & Co., Inc. Securities, Derivative & ERISA Litig.*, MDL No. 1658, 2009
WL 331426, at *10-12 (D.N.J. Feb. 10, 2009); *Stanford* v. *Foamex, L.P.*, 263 F.R.D. 156, 175
(E.D. Pa. 2009); *In re Schering-Plough Enhance ERISA Litig.*, 2012 WL 1964451 (D.N.J. Dec.
16, 2010); *Moore*, 268 F.R.D. at 538.

[6] The Settlement Class includes approximately 7,000 active participants in the Plan and
approximately 8,800 former participants. *See* Kilpela Decl. ¶ 23.

were fiduciaries of the Plan; (2) whether the Plan and the Participants were injured by breaches of fiduciary duties by Defendants; and (3) whether the Class is entitled to damages. "All of these questions are sufficient to satisfy plaintiffs' burden under Rule 23(a)(2) because they all address common issues of owed fiduciary responsibility to the plan participants." *Moore v. Simpson*, 1997 WL 570769, at *4 (N.D. Ill. Sept. 10, 1997). Consequently, Plaintiff demonstrates a "level of commonality more than sufficient under Rule 23(a)(2)." *In re: Honeywell Int'l Sec. Litig.*, 211 F.R.D. 255, 260 (D.N.J. 2002); *see also Karg et al. v. Transamerica Corp.*, 2020 WL 3400199, at * 2 (N.D. Iowa Mar. 25, 2020) ("ERISA actions have sufficient commonality when class members share questions of 'whether Defendants acted as fiduciaries, whether they breached their duties of prudence and loyalty, [and] whether they violated ERISA, as well as whether and to what extent the Plan was injured as a result.'"); *Tracey v. Mass. Inst. Tech.*, 2018 WL 5114167, at * 4 (D. Mass. Oct. 19, 2018) ("ERISA breach of fiduciary duty actions relate to the duties owed to the Plan as a whole, commonality is quite likely to be satisfied.").

### 3.  Plaintiff's Claims are Typical of the Class

Plaintiff satisfies the typicality prong of Rule 23 because Plaintiff and all Class Members, as participants in the Plan, were subjected to the same allegedly excessive recordkeeping fees and imprudent conduct of Defendants, and therefore, "plaintiff[] and proposed class members allege similar harm resulting from defendants' alleged fiduciary breaches.  In fact, the harm may be identical." *Karg*, 2020 WL 3400199, at * 3; *see also Stanford*, 263 F.R.D. at 167 (finding typicality requirement satisfied "because plaintiff challenges the same conduct that affects both the plaintiff and the absent class members"); *Sims v. BB&T Corp.*, 2017 WL 3730552, at *4 (M.D.N.C. Aug. 28, 2017) (finding typicality where "each named plaintiff's claim and each class member's claim is based on the same events and legal theory—a breach of fiduciary duty stemming from the

defendants' alleged disloyal and imprudent process for selecting, administering, and monitoring the [p]lan's investments" and where "the remedial theory . . . is identical for the named plaintiffs and the class members.") (citations omitted).

### 4.    Plaintiff and Class Counsel Will Adequately Protect the Interest of the Class

Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). "The rule 'tests the qualifications of class counsel and the class representatives. It also aims to root out conflicts of interest within the class to ensure that all class members are fairly and adequately represented in negotiations.'" *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, *5 (E.D. Pa. Sept. 24, 2019) (quoting *In re: Nat'l Football League Players Concussion Injury Litig,* 821 F.3d 410, 428 (3d Cir. 2016), *as amended* (May 2, 2016)). This test "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citation and quotation marks omitted).  Here both prongs of the adequacy test are met.

### i.    Plaintiff Has No Conflicts With Other Members of the Class and Will Vigorously Prosecute This Action On Behalf of the Class

Here, Plaintiff understands the nature of the claims and her duties as class representative to vigorously prosecute this case through its conclusion.  *See* Kehrer Decl. ¶¶5-6; *see also Stanford*, 263 F.R.D. at 171 ("Because Stanford is challenging the same course of conduct and seeking the same relief as the rest of the absent class members, the court finds that Stanford's interests are sufficiently aligned with the those of the class.")  Plaintiff has satisfied her duty by, *inter alia*: (a) providing information and conferring with counsel prior to the initiation of the action and reviewing the Complaint; (b) providing documents and assisting counsel in regard to developing

factual and legal theories to pursue recovery against Defendants; and (c) maintaining communication with counsel, monitoring the progress of the litigation, and approving the terms of the proposed Settlement. *Id.* Moreover, had this litigation continued, Plaintiff was committed to seeing this action through to the end and undertaking any responsibilities required of her as a class representative, including continuing to assist counsel in discovery matters, presenting for a deposition, participating in any necessary conferences or other proceedings, and testifying at trial. *Id.* at ¶ 6. Accordingly, Plaintiff is an adequate representative of the proposed Class.

> ii. **Plaintiff's Counsel Have No Conflicts With the Class, Are Qualified and Experienced, and Will Vigorously Prosecute This Action for the Class**

The inquiry into the adequacy of class counsel is now decoupled from the Rule 23(a)(4) inquiry into the adequacy of the class representatives and is analyzed under factors set forth in Rule 23(g). *Karg*, 2020 WL 3400199, at *5 (citing FED. R. CIV. P. 23) ("If the motion includes a proposal for the appointment of class counsel, set forth with particularity the information the court must consider in assessing proposed class counsel's ability to represent the interests of the class fairly and adequately, as set forth in Federal Rules of Civil Procedure 23(g)(1)(A) and (B)."). Rule 23(g) complements the requirement of Rule 23(a) that class representatives adequately represent the interests of class members by focusing on the qualifications of class counsel. Rule 23(g)(1)(A) instructs the court to consider, among other things: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. FED. R. CIV. P. 23(g)(1)(A). Rule 23(g) notes a court may also consider "any other matter pertinent to

counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B).

Here, Wade Kilpela Slade, LLP and Muhic Law LLC satisfy all prerequisites. *First*, these firms performed significant work identifying and investigating potential claims in this action. They began their investigation of claims several months before filing suit. Kilpela Decl., ¶¶ 3-5. This work included requesting documents from the Defendants pursuant to ERISA § 104(b)(4) and engaging consulting experts. Kilpela Decl., ¶ 5. *Second,* Proposed Class Counsel have significant experience prosecuting and resolving ERISA matters and other complex class litigation, and are knowledgeable of the applicable law. Kilpela Decl ¶¶ 30-31, 35; Muhic Decl. ¶¶ 6-11. *Third*, the firms have and will continue to commit the necessary resources to represent the class. Muhic Decl. ¶12. Based on the foregoing, Wade Kilpela Slade and Muhic Law have the requisite qualifications to lead this litigation. Accordingly, appointment of these firms as Class Counsel is warranted. *See Karg*, 2020 WL 3400199, at * 3 (appointing class counsel where "plaintiffs' counsel submitted documentation of their own qualifications and commitment.").

### B. The Class May Properly Be Certified Under Rule 23(b)(1) [7]

The proposed Class may be certified under Rule 23(b)(1)(A) and/or (B), as numerous courts have done in similar cases. *See*, *e.g., Henderson, et al., v. Emory Univ., et al*., No. 1:16-cv-02920 (N.D. Ga. Sept. 13, 2018) (certifying "excessive fee" class under 23(b)(1)(A) and (B)); *Clark v. Duke Univ.*, No. 1:16-cv-1044, 2018 WL 1801946 (M.D.N.C. April 13, 2018) (same); *Sacerdote v. New York Univ.*, No. 16-cv-6284, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) (certifying

---

[7] Plaintiff only addresses certification under Rule 23(b)(1) because certification is proper under that subpart of Rule 23, and Rule 23(b)(3) is intended to address "situations in which class action treatment is not as clearly called for as it is in Rule 23(b)(1)." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Because the class may be certified under Rule 23(b)(1), the Court need not reach the propriety of certification under any other subpart of Rule 23.

23(b)(1) class for "excessive fees"); *Leber, et al., v. Citigroup 401(k) Plan Investment Committee*, 323 F.R.D. 145 (S.D.N.Y. Nov. 27, 2017) (certifying class under 23(b)(1)(B)); *see also*, *In re: WorldCom Inc. ERISA Litig.*, No. 02-cv-4816, 2004 WL 2211664, at *3(S.D.N.Y. Oct. 4, 2004) (certifying ERISA claims under Rule 23(b)(1)(B)); *Kolar v. Rite Aid Corp.*, No. 01-cv-1229, 2003 WL 1257272, at *3 (E.D. Pa.Mar. 11, 2003) (same).

### 1.  Certification Under Rule 23(b)(1)(B) is Most Appropriate

Many courts have relied upon Rule 23(b)(1)(B) in certifying classes in analogous ERISA cases because the rule is particularly suited for cases alleging the breach of fiduciary obligations to plaintiffs. Indeed, the Advisory Committee Notes to Rule 23 explicitly instruct that certification under Rule 23(b)(1)(B) is appropriate in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." FED. R. CIV. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment); *see also Schering-Plough*, 589 F.3d at 604 (finding certification of a Rule 23(b)(1)(B) class is appropriate where plaintiff's "proofs regarding defendants' conduct will, as a practical matter, significantly impact the claims of other Plan participants and of employees who invested in the Stock Fund. [Plaintiff's] claims are based on defendants' conduct, not, as defendants urge, on unique facts and individual relationships"); *Moore*, 268 F.R.D. at 538 (certifying 23(b)(1)(B) class); *Clark v. Duke Univ.*, 2018 WL 1801946, at *9 (M.D.N.C. April 13, 2018) (certifying under Rule 23(b)(1)(B) when plaintiffs "established that individual adjudications would be dispositive of the interests of the other participants not parties to the individual adjudications, because the claims concern the same actions in managing the Plan and because damages are owed to the Plan as a whole and not individual plaintiffs").

Here, the Complaint alleges breaches of fiduciary duties under ERISA. Therefore, the only remedy available to participants in the Plan is Plan-wide relief, including the restoration of losses. *See Mass. Mut. Life Ins. Co.*, 473 U.S. 134, 139-40 (1985). Thus, the proposed Class meets the requirements of FED. R. CIV. P. 23(b)(1)(B), given the nature of this action and the relief sought on behalf of the Class. Accordingly, class certification should be granted under Rule 23(b)(1)(B), consistent with the Advisory Committee Notes to Rule 23 and the overwhelming weight of case law.

### 2.    Certification is Also Appropriate Under Section 23(b)(1)(A)

If the Court determines that certification is appropriate under Rule 23(b)(1)(B), the inquiry need go no further. *See, e.g.*, *Koch v. Dwyer*, No. 98-CV-5519, 2001 WL 289972, at *5 n.2 (S.D.N.Y. Mar. 23, 2001) ("Since class certification is proper under Rule 23(b)(1)(B), it need not be determined whether Plaintiff has also satisfied the requirements of Rule 23(b)(1)(A) or 23(b)(2)."). Nevertheless, it is not uncommon for courts to certify ERISA class actions under both subsections 23(b)(1)(B) and 23(b)(1)(A), where "inconsistent or varying adjudications with respect to individual class members [] would establish incompatible standards of conduct for the party opposing the class." *See, e.g.*, *Stanford*, 263 F.R.D. at 173-174; *Merck*, 2009 WL 331426, at *10-11; *In re: Nortel Networks Corp. ERISA Litig.*, 2009 WL 3294827, at *16 (M.D. Tenn. Sept. 2, 2009); *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 193-194 (W.D. Mo. 2009).

### VI.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court find the Settlement meets the standard for preliminary approval under Rule 23. The proposed preliminary approval order sets forth the proposed schedule of events which are subject to the Court's approval. The Parties propose the Fairness Hearing be scheduled as soon as practical at least 120 calendar

days from entry of the Preliminary Approval Order in order to provide the Settlement Class with fair notice and the opportunity to be heard, as well as to provide notice to appropriate federal and state officials as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-1715.

Dated:  May 29, 2025                    Respectfully submitted,

/s/ *Edwin J. Kilpela, Jr.*
Edwin J. Kilpela, Jr.
Paige T. Noah
WADE KILPELA SLADE LLP
6425 Living Place, Suite 200
Pittsburgh, PA  15206
Telephone: (412) 314-0515
ek@waykayslay.com
pnoah@waykayslay.com

Peter A. Muhic
**MUHIC LAW LLC**
923 Haddonfield Road, Ste. 300
Cherry Hill, NJ  08002
Tel: (856) 242-1802
peter@muhiclaw.com

*Counsel for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 29, 2025, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.


By: <u>*/s/ Edwin J. Kilpela, Jr.*</u>
Edwin J. Kilpela, Jr.